# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:08CR00054 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **KELLY ANDREW HOLLAND**, | ) | By: James P. Jones |
| | ) | Chief United States District Judge |
| Defendant. | ) | |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; James B. Lees, Hunt & Lees, L.C., Charleston, West Virginia, and John E. Jessee, Jessee & Read, P.C., Abingdon, Virginia, for Defendant.*

In this criminal case, the defendant, convicted by a jury of obstructing an official proceeding and possessing a stolen firearm, has filed a post-trial motion seeking arrest of judgment and a new trial. For the reasons that follow, I will deny the motion.

I

The defendant Kelly Andrew Holland was convicted by a jury of corruptly obstructing an official proceeding in violation of 18 U.S.C.A. § 1512(c) (West Supp. 2008) (Count One) and knowingly possessing a stolen firearm in violation of 18 U.S.C.A. §§ 922(j) and 924(a)(2) (West 2000) (Count Two). The Superseding

Indictment also charged the defendant with obstructing an official proceeding on two other occasions, but the jury found the defendant not guilty of those counts (Counts Five and Six). Two additional charges for making false statements in violation of 18 U.S.C.A. § 1001 (West 2000 & Supp. 2008) were dismissed without prejudice prior to trial on the government's motion, based on the defendant's venue objection as to those charges (Counts Three and Four).

The government contended at trial that after the defendant resigned from his position as a special agent for the United States Fish and Wildlife Service ("USFWS"), he kept a Marlin rifle that he had confiscated as evidence in a pending case with the corrupt intent to obstruct the official proceeding. In defense, it was argued that his possession of the firearm was accidental and without any unlawful intent. In the dismissed counts, it was alleged that the defendant made false statements under oath regarding his use of a government vehicle for personal purposes.

In his Motion for New Trial and Arrest of Judgment, the defendant argues that judgment as to Counts One and Two should be arrested or alternatively, that he should be granted a new trial. The motion has been briefed and argued and is now ripe for decision.

II

The defendant moves for arrest of judgment, arguing that "[t]he indictment did not charge a lawful or legitimate offense" and "[t]he Court did not have jurisdiction over the alleged misrepresentations made by the defendant in the Eastern District of Virginia." (Def.'s Mot. for New Trial and Arrest of J. ¶¶ 1-2.) The court may only arrest judgment if "(1) the indictment or information does not charge an offense; or (2) the court does not have jurisdiction of the charged offense." Fed. R. Crim. P. 34(a); *United States v. Lias*, 173 F.2d 685, 687 (4th Cir. 1949). Any ruling whose validity depends on evidence taken at trial is not reviewable by a motion in arrest of judgment. *United States v. Zisblatt*, 172 F.2d 740, 742 (2d Cir. 1949). Such a motion reaches only defects in the substance of the indictment, *United States v. Momsen*, 115 F.2d 635, 637 (7th Cir. 1940), and is inappropriate for a challenge against alleged procedural improprieties, *United States v. Figueroa*, 337 F. Supp. 645, 652 (S.D.N.Y. 1971) (noting that a Rule 34 motion was not the proper vehicle for challenging a verdict rendered outside the presence of the defendant).

The defendant alleges that the Superseding Indictment did not charge a lawful or legitimate offense in Counts Five and Six. Since the jury acquitted the defendant of Counts Five and Six, there is no judgment to arrest on those two counts. The defendant makes no claim that Counts One or Two were improperly charged offenses.

-3-

The defendant also claims that the court did not have jurisdiction over "the alleged misrepresentations made by the defendant in the Eastern District of Virginia." (Def.'s Mot. for New Trial and Arrest of J. ¶ 2.) This is in reference to evidence that the defendant made false statements under oath regarding his use of a government vehicle for personal purposes. These facts formed the basis for the charge in Count Four, which was dismissed prior to trial, but they were also relevant to the charges for obstructing an official proceeding in Counts Five and Six. The allegation that the court somehow did not have jurisdiction over certain evidence that was admitted at trial does not call for arrest of judgment. The defendant does not claim that the court had no jurisdiction over Counts One and Two. As such, even if the defendant's allegations were true, the proper remedy would not be arrest of judgment as to Counts One and Two.

III

The defendant makes several arguments seeking a new trial. This court has the discretion to grant a new trial where the interests of justice so require. Fed. R. Crim. P. 33(a); *United States v. Mitchell*, 602 F.2d 636, 639 (4th Cir. 1979). After considering each of the defendant's arguments below, I find that a new trial is not warranted in this case.

-4-

A

The defendant argues that the guilty verdicts were not supported by the evidence presented at trial. A conviction must be sustained if, viewed in the light most favorable to the government, there is substantial evidence to support it. *Glasser v. United States*, 315 U.S. 60, 80 (1942), *superseded by statute on other grounds as recognized in Bourjaily v. United States*, 483 U.S. 171, 177-78 (1987). I must determine "whether *any* rational trier of fact could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995) (internal quotations and alteration omitted). Although a motion for a new trial may be based on insufficient evidence, "a court should exercise its discretion to grant a new trial sparingly, and . . . it should do so only when the evidence weighs heavily against the verdict." *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003) (internal quotations omitted). The evidence in this case was sufficient for the jury to convict the defendant of Counts One and Two.

The jury was properly instructed that it could find the defendant guilty of obstruction of an official proceeding, the crime charged in Count One, if it found beyond a reasonable doubt that (1) the defendant corruptly concealed an object, or attempted to do so; (2) the defendant acted with the intent to impair the object's integrity or availability for use in an official proceeding; and (3) it was foreseeable

-5-

to the defendant that his actions would naturally and probably interfere with the official proceeding. (Jury Instruction No. 12.) *See* 18 U.S.C.A. § 1512(c); *United States v. Johnson*, 553 F. Supp. 2d 582, 626 (E.D. Va. 2008).

Evidence at trial showed that the defendant was compelled to resign after working for several years as a special agent with USFWS. After the defendant's departure, his former employer wrote to the defendant to inquire about certain evidence that was missing in a criminal prosecution that the defendant had worked on, which was referred to as the Bourne case. The defendant wrote a letter in reply stating that he did not have the Marlin rifle or other items relating to the Bourne investigation in his possession. Later, when the defendant was subpoenaed before the grand jury, he presented the Marlin rifle, which still had an evidence tag connected to it. From these circumstances, the jury could infer that because he had been fired, the defendant had the intent to corruptly conceal the rifle in order to impair its availability for use in the Bourne case.

These facts also constituted sufficient evidence for the jury to convict the defendant of the crime charged in Count Two, the knowing possession of a stolen firearm. *See* 18 U.S.C.A. § 922(j). Because there was sufficient evidence for a reasonable jury to convict the defendant of Counts One and Two beyond a reasonable doubt, a new trial will not be granted on this ground.

B

The defendant asserts that Counts Five and Six, of which he was acquitted by the jury, were meritless and contrived solely for the purpose of admitting evidence that otherwise would have been inadmissible as to Counts One and Two.

The facts alleged in the dismissed Count Four are essential to understanding the charges in Counts Five and Six.[1]  Count Four alleges that on October 19, 2006, the defendant, while still employed by USFWS, was interviewed under oath by agents of the USFWS Professional Responsibility Unit in Arlington, Virginia.  The agents showed the defendant a photograph of his government-issued truck with a five-ton trailer and an excavator attached.  An agent asked if the defendant had used his government vehicle to tow the trailer and excavator to his residence.  The defendant replied that he had not; that Weco Rentals had delivered those items to his home.  The indictment alleges that in fact, the defendant had used his government-issued truck to tow the trailer and excavator.  Later in the conversation, an agent stated, "I've asked you [if] we could receive copies of the . . . rental agreement . . . ."  The defendant replied, "I'll go back to Weco and . . . I'm sure that I can get a copy of the record of me renting the . . . excavator."  (Superseding Indictment 5.)

---

[1]  While the court dismissed Count Four, at the request of the government I allowed the facts stated therein, which were adopted by reference in Counts Five and Six, to survive the dismissal.  (Order, Jan. 28, 2009.)

-7-

Count Five charges that the defendant attempted to conceal a record or document, or otherwise attempted to obstruct, influence, or impede an official proceeding. The indictment alleges that the defendant went to Weco Rentals in Abingdon, Virginia, on October 20, 2006, and spoke to an employee about records concerning his September 8, 2006, rental of a trailer and excavator:

> Holland asked if there was a record of the transaction and whether the record showed that the items were delivered. Holland was told that there was a record and the record did not show delivery. Holland asked the employee if the employee would be able to tell someone if it was delivered or picked up. The employee told him words to the effect that "Yes, sir I can. It's all documented in black and white."

(Superseding Indictment 7.) Count Five further alleges that the defendant never supplied a copy of the September 8, 2006, Weco documents to the Professional Responsibility Unit.

The defendant insists that he was under no obligation to turn over incriminating documents from Weco and that his failure to obtain a copy of his rental records was not an obstruction of justice. The defendant notes that his actions did not actually obstruct USFWS's investigation of him; the agency was able to obtain all of the evidence it needed without his assistance. But what the defendant fails to consider is that by telling the agents that he would obtain a copy of the rental records and then refusing to actually do so, the jury could have found that the defendant impeded or

attempted to impede the agency investigation.[2]  Further, the jury could have found that the defendant attempted to impede the investigation by discussing the rental record's contents and availability with the Weco Rentals employee.  A defendant need not be successful in his obstructive efforts; an attempt to obstruct an official proceeding is sufficient for a conviction under 18 U.S.C.A. § 1512(c).  Count Five therefore included sufficient factual allegations for a charge of obstruction of an official proceeding.  Ultimately the jury acquitted the defendant of this count, but the charge itself was not improperly contrived.

Count Six alleges that the defendant attempted to obstruct an official proceeding when, in response to a supervisor's remark that the defendant's false statement would have to be disclosed to the prosecutor in any future case in which the defendant was involved, the defendant replied, "Well, we don't have to tell them." (*Id.*)  Such a statement indicates an intent to withhold vital *Giglio*[3] information from

_____

[2]     Obstruction of an official proceeding under 18 U.S.C.A. § 1512(c) includes obstruction of an agency investigation.  *See, e.g.*, *United States v. Hutcherson*, No. 6:05CR00039, 2006 WL 1875955, at *3 (W.D. Va. July 5, 2006) ("The defendant's conduct of lying to an FBI agent and subsequently guiding him on an expedition for nonexistent documents, is the type of conduct which Section 1512(c)(2) prohibits because the defendant intended to influence the FBI agent's actions and to obstruct and impede a criminal investigation by exhausting government resources on a meritless search.").

[3]     *Giglio v. United States*, 405 U.S. 150 (1972).  In order to comply with *Giglio*, the government must disclose potential impeachment information to a defendant.  This would include notifying a defendant that a government witness had previously lied under oath.

future Fish and Wildlife-related prosecutions. Although the jury was free to conclude that the defendant was merely asking a question or did not truly intend to corruptly obstruct an official proceeding, the charge itself was legitimate.

Since Counts Five and Six were legitimate charges, the defendant's allegation that they were included in the Superseding Indictment only to ensure the admission of certain evidence otherwise inadmissible as to Counts One and Two lacks merit.

C

The defendant makes three arguments as to why his statement to USFWS agents on October 19, 2006, should not have been admitted at trial. Each of these arguments fails.

First, the defendant argues that his statement from October 19, 2006, should have been suppressed because it was involuntary and therefore protected under *Garrity v. New Jersey*, 385 U.S. 493, 500 (1967) (holding that a compelled statement procured under threat of removal from office may not be used in subsequent criminal proceedings). A magistrate judge of this court considered this argument and entered a thoughtful Report and Recommendation on the matter. *United States v. Holland*, No. 1:08CR00054, 2009 WL 273327 at *1 (W.D. Va. Jan. 29, 2009). I accepted the Report and Recommendation and denied the Motion to Suppress, and I find that admission of the defendant's compelled statement was not in error.

-10-

The defendant argues that although his compelled statement would be admissible in a prosecution for a false statement, it was not admissible in the prosecutions for obstruction of an official proceeding as charged in Counts Five and Six. This argument is not persuasive. Obstruction of justice is a crime separate and apart from the matter being investigated on the date of the defendant's statement, and suppressing the compelled statement would serve no policy purpose. Suppression of the statement would immunize the defendant from prosecution for attempting to obstruct official proceedings, crimes alleged to have been committed after he gave the sworn statement on October 19, 2006, and related to the alleged falsity of that statement. Such a result is not compelled by *Garrity*. *See United States v. Veal*, 153 F.3d 1233, 1243 (11th Cir. 1998) ("*Garrity*-insulated statements regarding *past* events under investigation must be *truthful* to avoid *future* prosecution for such crimes as perjury and obstruction of justice.").

Second, the defendant contends that the October 19, 2006, statement should not have been admitted as to Counts Five and Six because it was overly prejudicial as to Counts One and Two. The defendant argues that evidence that the defendant lied about his use of government property for personal purposes made it more likely the jury would conclude that the defendant lied about his possession of the firearm relevant to Counts One and Two.

-11-

The statement was admitted as evidence of the defendant's motive and intent to commit the crimes charged in Counts Five and Six. *See* Fed. R. Evid. 404(b). Any resulting prejudice was not substantially outweighed by the probative value of the October 19, 2006, statement. *See* Fed. R. Evid. 403. The charges in Counts Five and Six would have made little sense to the jury without knowledge of the investigation of the defendant for misuse of government property and of the purportedly false statements made by the defendant during that investigation.

The jury received a limiting instruction that they could only consider evidence regarding the defendant's purported misuse of government property as it related to the defendant's intent or motive as to Counts Five and Six. (Jury Instruction No. 9.) "Jurors are presumed to adhere to cautionary instructions issued by the district court." *United States v. Smith*, 441 F.3d 254, 269 (4th Cir. 2006).

Third, the defendant argues that by admitting his October 19, 2006, statement, the court impermissibly "forced this defendant to choose between defending himself on the witness stand or invoking his Fifth Amendment rights as to the statement." (Mem. in Supp. of Mot. for New Trial and/or Arrest of J. 5.) Specifically, since Count Four, charging that the defendant made false statements on October 19, 2006, was dismissed without prejudice, the defendant still faced potential prosecution for those false statements in the Eastern District of Virginia. The defendant contends that

-12-

he had a defense to present as to Counts One and Two, but because the October 19, 2006, statement was admitted as to Counts Five and Six, he was unable to take the stand for fear of incriminating himself regarding the false statement charge.

The defendant compares his dilemma to that faced by the defendant in *Simmons v. United States*, 390 U.S. 377 (1968). In *Simmons*, the police searched a home without a warrant and found incriminating evidence in a suitcase inside; there was a dispute as to whether the owner of the home gave the police permission to search. Because defendant Simmons was not in the home when it was searched, the only way he could establish standing to assert a Fourth Amendment violation was to admit that the suitcase belonged to him. When his motion to suppress was denied, Simmons's admission was admitted as evidence against him in his subsequent trial. The Court found that Simmons was placed in an impermissible bind, forced between asserting his Fourth Amendment rights and his Fifth Amendment right against self-incrimination. It held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt . . . ." *Id.* at 394; *see also Lefkowitz v. Cunningham*, 431 U.S. 801, 807-08 (1977) (concluding that a New York law automatically removing an elected official if he failed to testify without immunity before a grand jury was unconstitutional).

-13-

The defendant claims that his situation also parallels that in *Miller v. Smith*, 99 F.3d 120 (4th Cir. 1996), *vacated en banc*, 115 F.3d 1136 (4th Cir. 1997). In *Miller*, the original three-judge panel held that a Maryland rule providing free trial transcripts only to indigent defendants represented by a public defender violated a defendant's right to equal protection and due process of law. 99 F.3d at 129-30. The court found that the rule impermissibly forced indigent defendants to choose between their right to counsel of choice, which might include private pro bono counsel, and the right to meaningful access to a transcript for appeal. But on rehearing en banc, the Fourth Circuit reversed, holding that denial of a free transcript to a defendant served by pro bono counsel did not violate his Sixth or Fourteenth Amendment rights. 115 F.3d at 1139-44. The defendant "had the power to avail himself of the assistance of counsel and a trial transcript" by electing to accept the services of the public defender's office, "but chose not to." *Id.* at 1142; *see also United States v. Ryan*, 810 F.2d 650, 656 (7th Cir. 1987) (noting that it was not improper for the government to ask defendant in a criminal contempt prosecution who was threatening him because "the government was not threatening his right to be free of bodily harm—a third party was").

As the government points out, the defendant here could have avoided his dilemma in several ways. First, the defendant could have chosen to waive any venue

-14-

objection as to Count Four so as to resolve all of the pending charges against him in one trial. Second, the defendant could have moved to sever Counts One and Two from Counts Five and Six. Instead, the government argues that the defendant made a strategic decision to go to trial on Counts One, Two, Five, and Six.

I agree with the government that the court is not responsible for the defendant's Hobson's choice. Like the defendant in *Miller*, and unlike the defendants in *Simmons* and *Cunningham*, other options were available to the defendant to get him out of his bind, and he chose his course. Further, defendants always face a difficult choice as to whether to testify on their own behalf. Even if the defendant were to receive a new trial for Counts One and Two, there is no assurance that he would testify. The defendant would still have a possible charge in the Eastern District of Virginia for his false statements and would risk incriminating himself if he testified.[4] Many other unknown factors may weigh in on the decision to testify.[5]

---

[4] The government argues that if the defendant were to testify in a new trial on Counts One and Two, it could question the defendant about whether he made false statements under oath. I need not rule on that issue. I merely suggest that by taking the stand, the defendant would put himself at risk.

[5] I am not convinced that the defendant's sole reason for not testifying was because of his fear of incriminating himself for making false statements as charged in Count Four since it appears to be undisputed that the defendant made the statements. (*See, e.g.*, Mem. in Supp. of Mot. for New Trial and/or Arrest of J. 11) ("[T]he defendant made a huge mistake in his career by not being truthful with the internal affairs investigators with Fish and Wildlife . . . .").

-15-

The evidence regarding the defendant's October 19, 2006, statement was properly admitted as to Counts Five and Six. Even if admission of the statement had some impact on the defendant's decision to testify, it would not be in the interests of justice to grant a new trial on that ground.

## D

The defendant argues that the court erred in denying his Motion to Dismiss prior to trial. The defendant moved to dismiss the Superseding Indictment because, he alleged, it resulted from an abuse of the grand jury process. I accepted the Report and Recommendation of a magistrate judge of this court and denied the motion. *See United States v. Holland*, No. 1:08CR00054 (W.D. Va. Jan. 21, 2009) (unpublished). For the reasons stated in the Report and Recommendation, described briefly below, the defendant's Motion to Dismiss was properly denied.

The defendant claimed that after securing the initial one-count Indictment against him, the government returned to the grand jury for the sole or dominant purpose of obtaining additional evidence for use against the defendant on the existing Indictment. "Once a defendant has been indicted, the government is precluded from using the grand jury for the sole or dominant purpose of obtaining additional evidence" for use against the defendant on the existing indictment. *United States v. Moss*, 756 F.2d 329, 332 (4th Cir. 1985) (internal quotations omitted). The

-16-

government is not prohibited from making a "good faith inquiry into other charges . . . even if it uncovers further evidence against an indicted person." *Id.* (internal quotations omitted).

Here, the inclusion of five new charges in the Superseding Indictment undermines the defendant's claim. There is a presumption of regularity in grand jury proceedings, and the defendant bears the burden of demonstrating that an irregularity has occurred. *Id.* The defendant did not meet that burden. Thus, the Motion to Dismiss was properly denied.

E

The defendant argues that the court erred in denying his oral motion for a mistrial. The defendant moved for a mistrial because the government allegedly "indirectly referenc[ed]" the fact that the defendant failed to testify during its closing argument. (Mem. in Supp. of Mot. for New Trial and/or Arrest of J. 9.) A review of the government's closing argument reveals no such reference. The only statement that could be construed as such is included in the following exchange:

> MR. RAMSEYER: Now, there's a whole bunch of people in this courtroom. Who is the one person who could have kept us from being here? Terry[6] Holland.

---

[6] Either counsel misspoke, or "Terry" is a typographical error for "Kelly."

-17-

MR. LEES: Note my objection. I'd like to address that issue at the conclusion of the argument.

THE COURT: Go ahead.

MR. RAMSEYER: If Kelly Holland had told the truth when testifying under oath about using the Government vehicle, we wouldn't be here. On October 20th, when he went to Weco Rentals, if he had gotten the invoice and sent it to the investigators, we wouldn't be here. If he had . . . not told the supervisor, "Don't tell the U.S. Attorney's Office about me lying," we wouldn't be here. And when he left Government service if he'd turned over this gun and the other evidence he took, we wouldn't be here.

(Trial Tr. vol. 3, 2, Feb. 4, 2009.)

When defense counsel objected, it is possible that he anticipated that the government was referencing the defendant's failure to testify. However, as the government's attorney continued, it became clear that he was referring to the defendant's allegedly criminal conduct, and not any failure to testify or bring evidence at trial. There is no danger that the jury could have interpreted the government's comment as a reference to the defendant's failure to testify. Further, the jury was instructed that it could not consider the fact that the defendant did not testify, and that the government had the burden to prove that the defendant was guilty beyond a reasonable doubt. (Jury Instruction No. 6.)

The defendant also objects to a comment the Assistant United States Attorney made that he did not know why the defendant kept possession of the Marlin rifle from

-18-

the Bourne case, even though the prosecutor knew that the defense claimed that the possession was accidental. Although the government was aware that the defendant claimed his possession of the rifle was accidental, the prosecutor was not required to accept that explanation. More importantly, the attorney's thoughts on the matter were immaterial. During the court's preliminary instructions, the jury was instructed that the opening and closing statements by the attorneys are not evidence.

In addition, the jury was instructed that they could not find the defendant guilty of obstructing an official proceeding under Count One unless the government proved beyond a reasonable doubt that the defendant acted corruptly and with the intent to obstruct an official proceeding. (Jury Instruction No. 12.) To act "corruptly" was defined as, "to act with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert or obstruct the official proceeding. 'Corruptly' does not include acting by accident or mistake." (*Id.*) The government's closing argument did not undermine these instructions, and the motion for mistrial was properly denied.

F

The defendant contends that the court erred in denying his oral motions for judgment of acquittal. However, the defendant's motions were properly denied. The government presented sufficient evidence for the jury to find the defendant guilty of

-19-

the crimes charged in Counts One and Two. *See supra* Part III.A. The government also presented sufficient evidence for the jury to find the defendant guilty of the crimes charged in Counts Five and Six. All of the facts alleged in the Superseding Indictment were supported by substantial evidence, and the indictment alleged sufficient facts for the crimes charged. *See supra* Part III.B.

G

The defendant also argues that his opening statement was improperly restricted. He contends that "when counsel for the defendant began to inform the jury of the defendant's background as a United States Secret Service agent charged with protection of the President of the United States and the White House[,] the Court, upon objection of the United States, sent the jury out of the room during the first few moments of defense counsel's opening statement and thereupon chastised counsel for attempting to discuss the defendant's background during opening statement." (Mem. in Supp. of Mot. for New Trial and/or Arrest of J. 8-9.) This misconstrues what actually occurred.

During defense counsel's opening statement, the government objected to counsel's description of the defendant's post at the White House on September 11, 2001, arguing that such information was irrelevant. I then instructed defense counsel, "you need to go over the evidence that will be presented here at trial that is relevant."

-20-

(Trial Tr. vol. 1, 2, Feb. 3, 2009.) After some discussion, I allowed defense counsel to discuss the defendant's work history, including his career as a United States Secret Service agent "with top secret clearance." (*Id.* at 3.)

The jury was not removed during this brief exchange. At a later point in the defendant's opening statement, the jury was removed when it became clear there was a dispute about which portions of the defendant's October 19, 2006, statement would be admitted at trial and would therefore be available for comment during opening statements. At that point, it was proper to remove the jury to discuss the admissibility of such evidence.

An opening statement is an objective summary of evidence counsel reasonably expects to produce. *See United States v. Sloan*, 36 F.3d 386, 398-99 (4th Cir. 1994). Therefore, my instruction to defense counsel to stay within the bounds of what would be relevant, admissible evidence was proper. The defendant's opening statement was not unreasonably restricted; I permitted defense counsel to discuss the defendant's distinguished career to a reasonable degree, without digressing too far afield with particular anecdotes that would not be admissible at trial.

Case 1:08-cr-00054-JPJ-PMS   Document 106   Filed 05/29/09   Page 21 of 29   Pageid#: 423

H

The defendant protests that his out-of-court statement that his continued possession of the Marlin rifle was accidental should have been admitted through his wife's testimony. This statement was hearsay not admissible under any exception, and was therefore properly excluded.

The defendant's wife, Shannon Lou Holland, testified that after her husband had resigned from his position at USFWS, they had moved to Kentucky. They lived in a small home, and many of their personal items were kept in a storage facility. One day while at their home, she witnessed the defendant opening a letter and reading a subpoena ordering him to appear before the grand jury with the Marlin rifle from the Bourne case. The defendant left their house, and returned with the Marlin rifle in his possession. She asked him what he had done. Before Mrs. Holland could testify regarding the defendant's response to this question, the government objected on hearsay grounds.

While the jury was out of the courtroom, I allowed the defendant to proceed on the record with the testimony he hoped the jury would hear. Mrs. Holland then testified, "He said, 'It [the Marlin rifle] must have gotten moved when we packed all of our things up. It inadvertently was with all of my other weapons. It was in a sleeve. I didn't know it was there.' He said, 'But I've tore everything apart, and I

-22-

found it.'" (Trial Tr. vol. 2, 2-3, Feb. 4, 2009.) Defense counsel argued that this statement by the defendant was admissible as a present sense impression, an excited utterance, or a then existing mental, emotional, or physical condition. *See* Fed. R. Evid. 803.

The defendant's statement was not a present sense impression. He was not "describing or explaining an event or condition made while [he] was perceiving the event or condition, or immediately thereafter." Fed. R. Evid. 803(1). Nor was the defendant describing a then existing mental, emotional, or physical condition. Rule 803(3) does "not includ[e] a statement of memory or belief to prove the fact remembered or believed," and the defendant was describing his intent or motive for keeping the Marlin rifle at a moment in the past when he decided to, or accidentally, packed it with his other weapons.

The statement was therefore only admissible if it was an excited utterance, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." Fed. R. Evid. 803(2). The excited utterance exception to the hearsay rule requires that the declarant must have (1) experienced a startling event or condition, and (2) reacted with spontaneity, excitement, or impulse rather than the product of reflection and fabrication. *See Morgan v. Foretich*, 846 F.2d 941, 947 (4th Cir. 1988); *Sakaria v.*

-23-

*Trans World Airlines*, 8 F.3d 164, 171-72 & n.10 (4th Cir. 1993) (noting the importance of spontaneity in order to ensure trustworthiness). For the second requirement of an absence of reflective thought, one factor to consider is any lapse in time between the exciting event and the statement. *Morgan*, 846 F.2d at 947; *see, e.g.*, *United States v. Mountain State Fabricating Co.*, 282 F.2d 263, 266 (4th Cir. 1960) (affirming the district court's exclusion of a statement where the declarant spoke at least one half hour after a fire started). Also,

> Although not grounds for automatic exclusion, evidence that the statement was made in response to an inquiry or was self-serving is an indication that the statement was the result of reflective thought. Where the time interval permitted such thought, those factors might swing the balance in favor of exclusion.

*McCormick on Evidence* § 272 (6th ed. 2006).

Here, receipt of the subpoena was likely an exciting event. But the defendant's statement that his possession of the rifle was an accident was not a spontaneous reaction to receipt of the subpoena. When the defendant made this statement to his wife, he had been gone for a substantial amount of time driving to their storage unit, looking for the rifle, and driving back to their home. He had time to reflect and process the event. He had time to consider what he would say to his wife. Her question about what he had done was not sufficiently starting to render his normal reflective thought inoperative. The defendant's reply was clearly self-serving and

likely the result of reflection. Thus, the defendant's hearsay statement was not an excited utterance.

The defendant argues that, nonetheless, the statement should have been admitted because he was unable to testify without incriminating himself on other pending charges. But the hearsay rules cannot be ignored simply because the defendant chose not to testify. Since the defendant's out-of-court statement was offered for the truth of the matter asserted and did not meet the criteria of any of the hearsay exceptions, the statement was properly excluded.

## I

The defendant makes several objections to the court's final jury instructions. I find that the instructions were correct and adequate.

The defendant objects to the definition of "corruptly" given in Jury Instruction Number 12,[7] alleging that it did not coincide with the defendant's proposed instruction numbers 3 and 4 and did not define "corruptly" as that term is defined in *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005). In *Arthur Andersen*, the Supreme Court found that a district court did not properly instruct the jury on the definition of "corruptly" for the purposes of a charge under 18 U.S.C.A. § 1512(b)(2)

---

[7]    For the full text of the instruction defining "corruptly," see *supra* Part III.E.

Case 1:08-cr-00054-JPJ-PMS   Document 106   Filed 05/29/09   Page 25 of 29   Pageid#: 427

(West 2000).[8] The Court stated that "corruptly" is "normally associated with wrongful, immoral, depraved, or evil." 544 U.S. at 705. "Only persons conscious of wrongdoing can be said to 'knowingly corruptly persuade.'" *Id.* at 706 (internal alterations omitted).

The defendant's proposed instructions 3 and 4 both define "corruptly" as being associated with "wrongful, immoral, depraved, or evil conduct." But *Arthur Anderson* does not require a laundry list of the most severe words associated with "corruptly." For instance, in a recent case in the Eastern District of Virginia, the district court defined "corruptly" for the purposes of 18 U.S.C.A. § 1512(c)(2) as connoting "wrongfulness or impropriety." *Johnson*, 553 F. Supp. 2d at 626. The Seventh Circuit upheld an instruction that "corruptly" entails acting "with the purpose of wrongfully impeding the due administration of justice." *United States v. Matthews*, 505 F.3d 698, 705-07 (7th Cir. 2007). Here, it was sufficient to say that to act "corruptly" entails acting "with an improper purpose" and engaging "in conduct knowingly and dishonestly with the specific intent to subvert or obstruct the official proceeding." (Jury Instruction No. 12.)

---

[8] The Court's ruling was specific to the 2000 version of the statute, which had since been amended by Congress. *See Arthur Andersen*, 544 U.S. at 698 n.1.

-26-

The defendant also protests that the court did not give his proposed instruction number 10 on recantation. "[A] defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). Recantation is not a defense to obstruction of an official proceeding under 18 U.S.C.A. § 1512(c). The defendant does not cite any case law in support of his proposed instruction. In addition, even if recantation were a defense to obstruction of justice, there was an insufficient factual basis to support the instruction.

The defendant also complains that the court did not give his proposed instruction number 2 defining "reasonable doubt." The Fourth Circuit "ha[s] repeatedly held that a district court need not, and in fact should not, define the term 'reasonable doubt' even upon request." *United States v. Williams*, 152 F.3d 294, 298 (4th Cir. 1998).

Next, the defendant objects because the court did not give his proposed instruction number 5 defining "intentionally." The court instructed the jury that in order to find the defendant guilty of obstructing an official proceeding, they had to find that the defendant acted "corruptly" and with "intent." (Jury Instruction No. 12.) The court defined "corruptly" as requiring "specific intent to subvert or obstruct the official proceeding" and noted that "'[c]orruptly' does not include acting by accident

-27-

or mistake." (*Id.*) These instructions sufficiently defined "corruptly" and "intent." The court's instructions did not differ in a material way from the defendant's proposed instruction number 5, which states that "intentionally" requires proof "that the defendant acted deliberately and purposefully. That is, defendant's acts must have been the product of defendant's conscious objective rather than the product of a mistake or accident."

The defendant also contends that the court did not give his proposed instruction number 6 defining "knowingly." The court gave a correct definition of "knowingly" in Instruction Number 13. The court instructed that "knowingly" means that the defendant "was conscious and aware of his action or omission, realized what he was doing or what was happening around him, and did not act or fail to act because of ignorance, mistake, or accident." (Jury Instruction No. 13.) The court's instruction was not significantly different from the defendant's instruction, which states that "[a] person acts knowingly if he acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness."

The defendant objects to Jury Instruction Number 14, which states that "[t]he fact that Mr. Holland was required to submit to an interview on October 19, 2006, as a condition of keeping his government job, did not violate any of his rights and is not a defense to the charges against him in this case." This was a correct explanation of

the law and was a proper curative instruction in response to defense counsel's references to the involuntary nature of the defendant's statement.

Finally, the defendant argues that in Jury Instruction Number 9, the court improperly instructed the jury that it could consider the defendant's statement regarding his purported use of a government vehicle for personal purposes as evidence of intent or motive as to Count Six as well as Count Five. The court correctly ruled that the October 19, 2006, statement was admissible as Rule 404(b) evidence as to both Count Five and Count Six, as that information was essential for the jury to understand the charges of those counts. It was correct to instruct the jury in that regard.

IV

For the foregoing reasons, it is hereby **ORDERED** that Defendant's Motion for New Trial and Arrest of Judgment is DENIED.

ENTER: May 29, 2009

/s/ JAMES P. JONES
Chief United States District Judge

-29-